**FULLER BROTHERS, INC,, Plaintiff,**

v.

**INTERNATIONAL MARKETING, INC. and U.S. Technology Corporation, Defendants.**

**INTERNATIONAL MARKETING, INC., Counterclaim Plaintiff,**

v.

**FULLER BROTHERS, INC. and Craig Fuller, Counterclaim Defendants.**

**Civ. No. 93–1105–FR.**

United States District Court, D. Oregon.

Dec. 21, 1994.

---

300

Randolph C. Foster, Joseph D. Cohen, Stoel Rives Boley Jones & Grey, Portland, OR, for plaintiff/counterclaim defendants.

James M. Callahan, Callahan & Shears, P.C., Portland, OR, Bruce H. Wilson, Oldham, Oldham & Wilson Co., L.P.A., Akron, OH, for defendant/counterclaim plaintiff Intern. Marketing, Inc.

## OPINION

FRYE, District Judge:

The matters before the court are (1) the motion of defendant International Marketing, Inc. (International Marketing), to transfer (# 88); and (2) the motion of International Marketing for reconsideration (# 98–1) or, in the alternative, motion to dismiss (# 98–2).

## BACKGROUND

In an opinion filed on July 14, 1994, this court granted summary judgment in favor of defendant International Marketing on the claim of the plaintiff, Fuller Brothers, Inc. (Fuller Brothers), for the intentional interference with economic advantage. 858 F.Supp. 142. The court stated the facts as follows:

> Plaintiff, Fuller Brothers, Inc. (Fuller Brothers), manufactures, sells and distributes "Tire Life," a liquid formula that extends the life of truck tires when it is placed inside the tires at the time they are mounted.

> Defendant International Marketing, Inc. (International Marketing) manufactures, sells and distributes "Equal," a dry, powder-like formula that reduces vibration and eliminates radial and lateral force variation when it is placed inside the tires during the wheel-assembly balancing procedure.

> Tire Life and Equal do not perform the same function, and they cannot be used in a truck tire at the same time.

> In April of 1993, Fuller Brothers filed a complaint against International Marketing with the regional office of the Occupational Safety and Health Administration (OSHA) in Harrisburg, Pennsylvania. In the complaint filed with OSHA, Fuller Brothers asserted that the product Equal releases formaldehyde gas and presents a health hazard to workers removing vehicle tires for repair because the inert urea formaldehyde component of Equal continuously breaks down, emitting formaldehyde at levels far greater than 0.1 parts per million.

> On September 7, 1993, Fuller Brothers filed the complaint in this case against International Marketing alleging a claim for the interference with business relationships or prospective advantage. International Marketing then filed an answer to Fuller Brothers' complaint and counterclaims against Fuller Brothers for violation of the Lanham Act, libel, and tortious interference with business.

858 F.Supp. at 143.

On September 30, 1994, Fuller Brothers, with leave of the court, filed a first amended complaint stating three claims for relief as follows: (1) a claim for the violation of the Lanham Act; (2) a claim for unfair and deceptive business practices under the laws of the State of Oregon; and (3) a claim for the tortious interference with business relationship and prospective advantage under the laws of the State of Oregon.

### *Motion of Defendant International Marketing for Reconsideration or, in the Alternative, Motion to Dismiss*

Fuller Brothers filed its first amended complaint with leave from the court. The motion of International Marketing to reconsider the motion to file a first amended complaint is moot. International Marketing argues next that this court should dismiss the first amended complaint. International Marketing contends that Fuller Brothers lacks standing as a non-competitor of International Marketing to assert a claim under section 43(a) of the Lanham Act, and that the court should dismiss the state law claims when the claim under section 43(a) of the Lanham Act is dismissed.

Fuller Brothers argues that the allegations in the first amended complaint adequately state a claim under section 43(a) of the Lanham Act because it has alleged some discernible competitive injury.

■ A motion to dismiss under Rule 12(b)(6) will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir.1987).

In the first amended complaint, Fuller Brothers alleges, in relevant part:

> 7. Fuller Brothers manufactures, sells and distributes a number of products for motor vehicles including TIRE LIFE, a liquid formula that extends tire casing and

rim life when placed inside motor vehicle tires.

8. Fuller Brothers has been distributing TIRE LIFE in interstate commerce since 1962, with annual sales of over $1 million.

9. IMI also manufactures, sells and distributes a number of products for motor vehicles including EQUAL, a dry formula placed inside motor vehicle tires. In its promotional literature, IMI claims, among other things, that EQUAL:

(a) Prevents tire and wheel vibration;

(b) Improves tire wear; and

(c) Eliminates the need for lead weight balancing of tires and wheels.

10. Fuller Brothers and IMI are competitors.

11. Fuller Brothers' TIRE LIFE product and IMI's EQUAL product are marketed to many of the same customers.

12. IMI instructs its customer that the EQUAL product should not be installed into tires with liquid in the tires.

13. For EQUAL to be effective in its intended application, it should not be used or combined with Fuller Brothers' TIRE LIFE product.

14. Consequently, the commercial and competitive effect of each sale of the EQUAL product is the reduction of the market for Fuller's TIRE LIFE product.

15. By use of an aggressive national advertising campaign, IMI has made, and is continuing to make, the following false or misleading representations or descriptions to consumers concerning the nature, characteristics or qualities of its EQUAL product:

(a) It is "non-toxic";

(b) It is "environmentally safe";

(c) It is "biodegradable";

(d) No formaldehyde gas is released from the product through its use or disposal;

(e) It protects the inner liner of a tire;

(f) It acts as a lubricant;

(g) It will not absorb moisture;

(h) It is "chemically inert" and will not break down or decompose;

(i) Its use, release and disposal will not implicate Federal or state occupational health or hazardous substance regulations or standards regarding exposure of employees to formaldehyde; and

(j) It is not a hazardous substance as defined under the Federal and applicable state hazardous substances and occupational safety acts.

16. IMI's false, deceptive, or misleading representations or descriptions are material to consumers' purchasing decisions. But for these representations, IMI would not have enjoyed the commercial success of EQUAL it has achieved.

17. As a result of IMI's false or misleading misrepresentations, Fuller Brothers has suffered lost sales of its TIRE LIFE product in an amount which exceeds $50,000.00 exclusive of interest and costs.

Fuller Brothers' First Amended Complaint, pp. 2–5.

 Section 43(a) provides two bases for liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade, dress, or other device ("false association"), and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.1992). In a claim for false association, the plaintiff need not be a competitor to bring an action under the Lanham Act. However, "simple claims of false representations in advertising are actionable under section 43(a) when brought by competitors of the wrongdoer." *Id.* at 1109.

██ In *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213 (9th Cir.1987), the plaintiff, a movie producer, had entered into a contract with a film distributor under which the plaintiff's movie would be advertised with a "PG" rating. Instead, it was advertised with an "R" rating, thereby limiting its marketing among young movie-goers. The plaintiff brought an action under section

43(a) asserting that the defendants had misrepresented the film in its advertising.

The United States Court of Appeals for the Ninth Circuit upheld the grant of summary judgment to the defendants by the district court on the grounds that the plaintiff had failed to show injury by a competitor. The court explained:

> The final section of the Lanham Act—in a passage unusual, and extraordinarily helpful, in declaring in so many words the intent of Congress—states that "the intent of this chapter is to regulate commerce within the control of Congress ... to protect persons engaged in such commerce against unfair competition." We quote the operative language. The rest of the declaration of intent relates to the use of trademarks and is not relevant here. The statute is directed against unfair competition. To be actionable, conduct must not only be unfair but must in some discernible way be competitive. In oral argument, Halicki suggested that United Artists Communications in fact had films competitive with his which would have benefited by decreasing the box office attraction of his. The films were not identified. They were not a part of his case and reference to them came too late to save it. Halicki failed to show injury by a competitor.
>
> If Section 43(a) is not confined to injury to a competitor in the case of a false designation, it becomes a federal statute creating the tort of misrepresentation, actionable as to any goods or services in commerce affected by the misrepresentation. As one treatise suggests, the Lanham Act would then be similar to French, German and Swiss law where, by virtue of a general code clause, in any suit in tort or contract the violation of good morals may become an issue. Broadening the Act from unfair competition to unfair trade "is equivalent" to the complete dilution of the concept of unfair competition.

812 F.2d at 1214.

In the case before the court, Fuller Brothers alleges a claim for injury caused by false advertising under section 43(a). "To be actionable, [the] conduct [alleged] must not only be unfair but must in some discernible

way be competitive." *Id.* Recovery under section 43(a) in a false advertising case is "confined to injury to a competitor." *Id.*

In the complaint, Fuller Brothers alleges, in general, that "Fuller Brothers and IMI are competitors." Fuller Brothers' First Amended Complaint, p. 2, ¶ 10. However, Fuller Brothers does not allege any facts to support this conclusory statement. The issue before the court is whether Fuller Brothers has standing under the Lanham Act to bring a claim for false advertising against the maker of a product that is "marketed to many of the same customers" (*Id.* at ¶ 11) as its product and "should not be used or combined" (*Id.* at ¶ 13) with its product but that "do not perform the same function" 858 F.Supp. at 143 as its product.

Competitors are "[p]ersons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival." *Black's Law Dictionary,* Fifth Edition, p. 257.

EQUAL is a tire balancing product. TIRE LIFE is not a tire balancing product. If this court holds that Fuller Brothers has stated a claim under the Lanham Act, the Lanham Act "becomes a federal statute creating the tort of misrepresentation, actionable as to any goods or services in commerce affected by the misrepresentation." *Halicki,* 812 F.2d at 1214. The court in *Halicki* held that this is not the law in the Ninth Circuit.

■ In the second claim for relief in the first amended complaint, Fuller Brothers alleges a cause of action under "applicable state statutes." This allegation is not adequate to state a claim for relief.

In the third claim for relief in the first amended complaint, Fuller Brothers alleges a claim for the interference with business relationship and prospective advantage in order to preserve its right to appeal the ruling of this court that International Marketing is entitled to summary judgment on this claim.

The motion of International Marketing for reconsideration (# 98–1) is moot and to dismiss (# 98–2) is granted.

*Motion of Defendant International
Marketing to Transfer*

Defendant International Marketing moves the court to transfer this action to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) where jurisdiction and venue are proper and where it is more convenient to litigate the counterclaim brought by International Marketing. International Marketing argues that transfer is warranted on the grounds that (1) only the permissive counterclaim of International Marketing remains pending before this court; (2) the continuing jurisdiction of the Middle District of Pennsylvania, which has handled the prior disparagement litigation between the parties, can be invoked; (3) the cause of action arose in the Middle District of Pennsylvania, and personal jurisdiction over Fuller Brothers and Craig Fuller are appropriate in that forum; and (4) all remaining discovery will focus upon deponents and information outside of the District of Oregon, with the majority of the deponents located in the Middle District of Pennsylvania.

Fuller Brothers opposes transfer on the grounds that (1) International Marketing elected to file its permissive counterclaims in the District of Oregon; (2) Fuller Brothers will be calling witnesses from the District of Oregon; (3) the majority of discovery has already taken place, and the majority of evidence will not be coming from the State of Pennsylvania; and (4) the prior litigation in the State of Pennsylvania is not related to this litigation.

 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The trial judge is entitled to weigh the factors for and against transfer exercising its discretion on a case-by-case basis. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979). The party seeking transfer of an action has the burden to justify by particular circumstances that the transfer is proper. *Id.*

The court finds that International Marketing has not carried its burden to show that the interests of justice favor transfer over the objections of Fuller Brothers. Significant progress has been made toward resolving this case in this forum. While International Marketing contends that the remaining discovery will focus upon the Middle District of Pennsylvania, many of the trial witnesses for Fuller Brothers are from the District of Oregon. A transfer of this case would only shift the inconvenience from one party to another.

The motion of International Marketing to transfer (# 88) is denied.

## CONCLUSION

The motion of International Marketing for reconsideration (# 98–1) is moot; the alternative motion to dismiss (# 98–2) is granted. The motion of International Marketing to transfer (# 88) is denied.